# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re** | |
| THELDA HENDRICKS, | **Bankruptcy Case** |
| | **No. 09-41113** |
| **Debtor.** | |

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

    Ken Lyon, Pocatello, Idaho, Attorney for Debtor.

    Mark V. Cornelison, Deputy Prosecuting Attorney, Bingham
County, Blackfoot, Idaho, Attorneys for Creditor Bingham County.

### *Introduction*

    Once again the Court is called upon to consider Idaho's medical

indigency statute, and the enforceability in bankruptcy of the lien granted

to counties under that law.

MEMORANDUM OF DECISION - 1

On this occasion, an apparent issue of first impression has been

submitted to the Court by Debtor Thelda Hendricks, who moved to avoid

a statutory medical indigency lien because, she argues, it has lapsed and

has not been properly renewed.  Docket No. 30.  Bingham County objected,

contending that medical indigency liens never expire, and therefore, need

not be renewed.  Docket No. 34.

The Court conducted a hearing concerning Debtor's motion on

December 9, 2009, the parties have submitted briefing, and the issues were

taken under advisement.  Having now duly considered the submissions

and arguments of the parties, as well as the applicable law, this

Memorandum disposes of the motion.  Fed. R. Bankr. P. 7052; 9014.[1]

### *Procedural History*

On July 27, 1998, Debtor received medical services at a hospital in

Blackfoot, Idaho.  She applied for county assistance in paying for those

services, claiming she was medically indigent.  The next day, on July 28,

---

[1]  Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the
Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION - 2

1998, Bingham County recorded a Notice of Lien and Application for

Medically Indigent Benefits in the county real estate records.  Docket No.

31.

On July 28, 2009, Debtor filed a chapter 7 petition.  Docket No. 1.  On

schedule A, she listed her interest in her home in Blackfoot, Idaho, valued

the home at $95,000 and indicated it was subject to a single lien in favor of

a creditor to secure a debt of $8,165.85.  *Id*.  Debtor claimed a $100,000

homestead exemption on schedule C, and no objections were filed to this

exemption claim.  *Id*.  Debtor did not list Bingham County's lien in her

schedule D of secured creditors.  Instead, she listed "Bingham County

Indigent Services" on schedule F as holding an unsecured, nonpriority

creditor with a claim valued at $9,100.  *Id*.

On October 27, 2009, Debtor filed a motion to avoid Bingham

County's lien on her real property.  Docket No. 31.[2]

---

[2] Debtor had earlier sought to avoid Bingham County's lien by a motion
to avoid the lien under § 522(f)(1)(A), but that motion was denied after hearing,
without prejudice, because Debtor conceded the county's lien is a statutory lien,
not a judgment lien.  *See* Docket Nos. 17, 24 and 25.  Debtor then filed the present
motion challenging the validity of the county's lien under state law.  Arguably,

MEMORANDUM OF DECISION - 3

*Analysis and Disposition*

A. <u>Idaho's Medical Indigency Statute</u>.

In 1974, the Idaho Legislature created the County Medical Indigency Care Program ("County Program") to provide medical care for indigents through the creation and maintenance of county hospitals, or by paying medical providers for treatment rendered to indigents.  "'[T]he legislature's general intent in enacting the medical indigency assistance statutes is twofold:  to provide indigents with medical care and to allow hospitals to obtain compensation for services rendered to indigents.'"  *St. Luke's Reg'l Med. Ctr., Ltd. v. Bd. of Comm'rs*, 203 P.3d 683, 685 (Idaho 2009) (quoting *Univ. of Utah Hosp. v. Ada County Bd. of Comm'rs*, 153 P.3d 1154, 1156 (Idaho 2007)).  The statute authorizing and implementing the program was amended significantly in 1996, at which time the lien provision at issue here was added.

---

Debtor should have commenced an adversary proceeding against Bingham County.  See Rule 7001(2) (instructing that an action to determine the validity of a lien is an adversary proceeding.)  Bingham County has not objected to Debtor's procedural approach, and the Court discerns no prejudice in simply resolving the issues on the basis of Debtor's amended motion.

MEMORANDUM OF DECISION - 4

Generally speaking, the County Program works in this fashion: when a resident of an Idaho county needs medical treatment and services, but cannot afford to pay for the charges, the patient may seek payment assistance from the County Program.  An application for these benefits may be submitted in advance of treatment, or afterward in an emergency situation.  A sworn written application must be completed, either by the patient or by a third party on the patient's behalf.  Idaho Code §§ 31-3502(24); 31-3504(1)-(2); 31-3505.

Upon the filing of the application, whether by the patient or a third party, a statutory lien automatically attaches to, among other assets, "all real and personal property of the applicant and on insurance benefits to which the applicant may become entitled . . . . "  Idaho Code § 31-3504(4); *Mechling v. Bonner County (In re Mechling)*, 284 B.R. 127, 128 n. 1 (Bankr. D. Idaho 2002) (lien is a statutory lien).  At its discretion, a county may perfect the lien by recording a notice with either the county for real property, or with the Secretary of State for personal property.  Idaho Code § 31-3504(4).

MEMORANDUM OF DECISION - 5

If the notice of lien is recorded, the lien is given a priority date as of the date the medical services were provided. *Id*.

If the application is approved, a claim for payment is submitted to the Idaho Department of Health and Welfare, which reviews the claim, and then forwards it to the resident's county. Idaho Code § 31-3553(1). If approved, the resident's county thereafter pays the patient's medical service providers the amount of the reviewed claims. Counties are obligated to the first $11,000 of approved medical expenses; when that threshold is met, the claims are no longer forwarded to the respective counties, but are instead forwarded to Idaho's catastrophic health care cost program for payment. *See* Idaho Code §§ 31-3503(1); 31-3519. The change in payor occurs solely due to the $11,000 threshold being met; no subsequent application need be filed in order to trigger payment from the state's catastrophic fund, and no separate lien is created nor filed by the state.

///

///

MEMORANDUM OF DECISION - 6

B. <u>Lien Expiration</u>.

The statute creating the lien in favor of the county for indigent

medical benefit payments does not set forth an expiration date or renewal

scheme for the lien.  On the other hand, the statute also does not expressly

provide that the lien continues in perpetuity until the debt is paid.  It is

this silence in the statute that spawned the dispute in this case.

Debtor contends that the Idaho legislature surely must have

intended the medical lien to be subject to some statute of limitations.

Debtor argues that, in the absence of any other clear instructions, Idaho

Code § 45-1901 *et seq.* is applicable to statutory medical indigency liens.

Bingham County disagrees.

1. <u>Idaho Code § 45-1906</u>.

Title 45, Idaho Code, deals with liens, mortgages and pledges.

Chapter 19 of that title  is entitled "State Liens", and provides that "a

notice of lien is effective for a period of five (5) years from the date of

filing, unless sooner released by the filing agency."  Idaho Code § 45-

1906(1).  It further provides that the lien's effectiveness "lapses on the

MEMORANDUM OF DECISION - 7

expiration of the five (5) year period unless a notice of continuation is filed prior to the lapse." *Id*. Upon lapse, the state lien becomes unperfected. Idaho Code § 45-1906(3). Debtor contends that because Bingham County recorded the indigency lien against Debtor's property over eleven years ago, and has never filed a notice of continuation for the lien, the lien has therefore expired, and any debt to the county or State has been discharged in her bankruptcy case.[3] While the Court is sympathetic to Debtor's concerns that it is bad policy to allow the County's lien to cloud title to her house forever, the Court disagrees with her position that Idaho Code § 45-1906 applies to statutory medical indigency liens.

Whenever possible, the Court must apply a statute according to its plain meaning. *In re Steinhaus*, 349 B.R. 694, 704-05 (Bankr. D. Idaho 2006). On its face, Chapter 19 of Title 45 of the Idaho Code is limited to six types of liens, five of which are clearly not applicable in this case. The only potentially applicable provision of the statute reads:

---

[3] Bingham County has not suggested, and apparently concedes, that Debtor's personal liability for any claim under the medical indigency statute is not excepted from discharge.

MEMORANDUM OF DECISION - 8

> (2) The scope of this chapter is limited to liens in the real and personal property of:
>
> *****
>
> (f) Individuals who are subject to liens pursuant to chapter 2, title 56, Idaho Code, for medical assistance, or the estates of such individuals.

Idaho Code § 45-1901(2)(f).[4]  Because the scope of this chapter of the Idaho

Code is limited, only if a medical indigency lien fits within "chapter 2, title

56" will it be subject to the five year limit on duration of the lien.

The Court is unable to conclude that a medical indigency lien arising

under Idaho Code § 31-3504(4) is the same thing as a medical assistance

lien for these purposes.  Idaho Code, title 56, chapter 2 is Idaho's general

public assistance law.  It covers a broad array of programs and benefits,

from child support issues to those impacting mentally deficient persons.

Included in its scope are laws relating to "medical assistance," which is

defined by the statute as "payments for part or all of the cost of such care

and services allowable within the scope of title XIX of the federal social

---

[4]   The statute reiterates its limited scope when it provides that the "[c]reation and attachment of liens for which notices are filed pursuant to this chapter are governed by the provisions of [each of the code sections specified in Idaho Code § 45-1901(2)(a)-(f)]."  Idaho Code § 45-1903.

MEMORANDUM OF DECISION - 9

security act as amended as may be designated by department rule." Idaho

Code § 56-201(o).

It appears the Idaho legislature specifically differentiated between

medical assistance provided under Title 56, and payments for medically

indigent persons under the County Program at issue here:

> Beginning October 1, 1991, the state shall fund the
> catastrophic health care cost program from the
> catastrophic health care cost account which shall
> provide assistance to *medically indigent persons
> who are not eligible under the state plan for medicaid
> under title XIX of the social security act* or medicare
> under title XVIII of that act.

Idaho Code § 56-209f (emphasis added). The catastrophic health care cost

program is the same one referred to above in the County Plan. In addition,

Idaho Code § 56-211 provides that:

> Application for public assistance under this act
> shall be made in the manner and form prescribed
> by the state department, and the application shall
> contain such informatin [sic] bearing on the
> applicant's eligibility as the state department may
> require.

Idaho Code § 56-211.

MEMORANDUM OF DECISION - 10

In the County Program, the application is made to the county, which is reviewed by the Idaho Department of Health and Welfare. In other words, the County Program is run by the respective counties, with oversight by the State. In contrast, public assistance provided under Title 56 is a program operated by the State, with applications made directly to the Department. Clearly, these are two distinct programs. As a result, because the legislature distinguishes medical assistance under Title 56 from that provided under the County Program, any liens created under the medical assistance program are also distinct from those arising under the indigency statute, and the duration limitation for medical assistance liens under Idaho Code § 45-1904 will not apply to an indigency lien.

Debtor highlights the fact that while the lien filed by Bingham County purports to secure the total balance owed for medical claims paid, under the program, the County's exposure is limited to $11,000. Debtor contends this supports her position that the the lien is actually a state lien.

Debtor's argument is untenable for two reasons. First, in this case, only $795 of Debtor's medical indigency claim will be paid by the state.

MEMORANDUM OF DECISION - 11

Even if Debtor is correct, then, the bulk of the debt is indeed owed to

Bingham County, and is arguably properly secured the by County's

recorded lien.

Second, as discussed above, so-called "state liens" under the statute

are specifically limited to six specific types of claims; a medical indigency

claim is not one of them.  While the County Program's statutory scheme

does not expressly provide that the lien secures amounts paid by the State,

that is of no moment.  Under the program, when amounts are reimbursed

to the county by a participant, a county is obligated to share such funds

with the State in an amount proportionate to the amount of the claim paid

by each entity.  Idaho Code § 31-3510A.  Thus, technically, the county

needs the protection of the lien until the full amount of the claim is

reimbursed, lest the county become unsecured for its proportionate share

of the balance due.

In sum, the five year duration limitation on certain "state liens" does

not apply to the lien at issue here.

///

MEMORANDUM OF DECISION - 12

2.  <u>Other Lien Duration Provisions</u>.

A number of other Idaho statutes provide for the creation of liens of

limited duration.  For example, Idaho Code § 10-1110 provides that the

recording of a money judgment creates a lien against the debtor's real

property, which lien continues for five years from the date of the

judgment.  Idaho Code § 10-1111 lays out the process for renewing this

lien.  Similarly, Idaho law provides a lien for two years, with the

opportunity for renewal, upon real estate which has been levied upon

under a writ of execution or attachment.  Idaho Code § 8-539.

In contrast, several Idaho statutes create liens with no specific

expiration date.  *See e.g.,* Idaho Code §§ 14-409 (estate and transfer tax lien

created at the time of decedent's death and continuing "until paid"); 43-

2519 (local improvement district assessment creates a lien continuing

"until paid, and until paid, such lien shall not be subject to extinguishment

for any reason whatsoever . . ."); 50-1721 (same as § 43-2519); 63-206

(property taxes levied are a "first and prior lien" and "shall only be

discharged by the payment or cancellation of the property taxes"); 63-

MEMORANDUM OF DECISION - 13

602G(5)(i) (same as § 63-206)).  Thus, it appears that the Idaho Legislature

is comfortable with the notion of creating statutory liens, especially those

protecting governmental entities, with no fixed duration.  Moreover, the

Court has located no cases in which the state courts examine, or even

mention, the duration of medical indigency liens under the County

Program.

The legislature has not seen fit to assign a specific duration to

medical indigency liens, and the Court may not judicially impose such a

limitation.  Debtor has not shown that Bingham County's statutory

medical indigency lien has expired in this case.

C.  <u>Statute of Limitations vs. Lien Duration</u>.

In Debtor's briefing, and again during oral argument at the motion

hearing, Debtor discussed whether the debt underlying the statutory lien

was "stale."  In particular, Debtor contends that the statute of limitations

provided in Idaho Code § 5-224 applies is to the County's claim, and that

since the debt is no longer enforceable, the statutory lien is no longer valid.

MEMORANDUM OF DECISION - 14

The provision Debtor cites is Idaho's generic statute of limitation.  In
other words, it specifies the time limit for commencing actions to enforce
claims not addressed by other, specific statutes.  It requires that "[a]n
action for relief not hereinbefore provided for must be commenced within
four (4) years after the cause of action shall have accrued."  Idaho Code §
5-224.[5]

The Idaho courts have considered the interplay between statutory
lien duration and the statute of limitations to enforce claims.  In *Lemhi
County v. Boise Live Stock Loan Co.*, 278 P. 214 (Idaho 1929), the Idaho
Supreme Court considered whether a complaint, which in substance stated
a claim to collect taxes, was barred by the statute of limitations even
though, by statute, the tax lien securing that liability continued until the
debt was paid.  The court stated:

> Under our statute (C. S. § 6611) [now Idaho
> Code § 5-218], "an action upon a liability created

---

[5] Idaho Code § 5-224 is made applicable to state actions by Idaho Code
§ 5-225, which provides that "[t]he limitations prescribed in this chapter apply to
actions brought in the name of the state, or for the benefit of the state, in the same
manner as to actions by private parties."

MEMORANDUM OF DECISION - 15

by statute, other than a penalty or forfeiture,"
must be commenced within three years.

The limitations prescribed apply to actions
brought in the name of, or for the benefit of, the
state, in the same manner as actions by private
parties (C. S. § 6618) [now Idaho Code § 5-225],
and therefore apply to actions brought by
counties.

The language of C. S. § 3097 [now largely
included in Idaho Code § 63-206], to the effect
that the tax lien "shall only be discharged by the
payment, cancellation or rebate of the taxes,"
does not operate to take its enforcement out of the
general statutes of limitation.  Statutes of
limitation are statutes of repose so far as civil
actions are concerned, and do not extinguish the
lien.  They apply to the remedy, and cut off the
right of enforcement, although the lien still exists.

*Lemhi County,* 278 P. at 216-17 (questioned on other grounds by *Lightner v.*

*Huntsman,* ___ F.Supp. ___, 2009 WL 3089220 *10 (D. Idaho Sep. 23, 2009)

(internal citations omitted).[6]

Based upon this decision, it appears that while the County may lose

its right to bring an action to collect Debtor's underlying debt under the

---

[6]  In contrast, some statutes specifically provide that the lien will lapse
when the statute of limitations expires.  *See U.S. v. Hemmen,* 51 F.3d 883, 887 (9th
Cir. 1995) (citing *Glass City Bank v. U.S.,* 326 U.S. 265, 267 (1945)); 26 U.S.C.
§ 6502(a).

MEMORANDUM OF DECISION - 16

County Program, its statutory lien will nonetheless continue in effect. Even if the County's claim is no longer enforceable by legal action against Debtor, the statutory lien remains vital.[7]

D.  <u>Avoidance under the Bankruptcy Code</u>.

The Code provides that statutory liens may be avoided to the extent that the lien "is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists".  11 U.S.C. § 545(2).  Debtor contends that Bingham County's lien was unperfected as against a BFP at the time she commenced her bankruptcy case, but of course, the Court has concluded otherwise above.  As a result, Debtor's suggestion that this bankruptcy avoidance power helps her is misguided.

---

[7] Notably, while medical indigency liens may be understood to expire when the underlying debt is paid, there is no requirement in the statutes that the county record a release of the lien upon payment, as other statutes do.  *See e.g.*, Idaho Code § 45-1908 (requiring state agency to file a notice of release of lien within thirty days of satisfaction).

MEMORANDUM OF DECISION - 17

Moreover, even if there were room to argue that the County's lien was unperfected under state law, the avoidance power upon which Debtor relies vests in the bankruptcy trustee, not a chapter 7 debtor.  Section 522(h) provides an exception to the tenet that only trustees can avoid transfers of a debtor's property in bankruptcy.  It provides:

> The debtor may avoid a transfer of property of the debtor . . . to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if –
>> (1) such transfer is avoidable by the trustee under section 544, 545 . . . ; and
>> (2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h).  In addition, § 522(g) provides:

> Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subjection (b) of this section property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if –
>> (1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

MEMORANDUM OF DECISION - 18

> > (B) the debtor did not conceal such
> > property[.]

11 U.S.C. § 522(g).

As can be seen from the language of the Code, even assuming the
property is exempt and the other conditions of the statute are satisfied,
Debtor may wield the trustee's power only to avoid an *involuntary* transfer
of her property. Here, Debtor executed the application for indigent
medical benefits, which application automatically generated a statutory
lien. Under these facts, it appears the "transfer" of the lien to the County
was therefore voluntary for purposes of § 522(g)(1)(A).[8]

Debtor may not avoid Bingham County's lien under § 545(2)
because the lien was properly perfected and enforceable against a BFP as
of the date of Debtor's bankruptcy filing, and because the transfer of the
lien to the County was voluntary.

///

_____

[8] It would be a closer call to decide whether a county's medical indigency
lien constituted an involuntary transfer of a debtor's property where the
application is filed by a third party on the debtor's behalf. The Court expresses
no opinion concerning this issue.

MEMORANDUM OF DECISION - 19

*Conclusion*

Debtor has not shown that Bingham County's lien on Debtor's real property is unenforceable under state law.  Debtor's motion to avoid that lien will therefore be denied by a separate order.

Dated:  March 1, 2010

_____

Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 20